*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID C. NORDLUND, | ) | |
| | ) | Supreme Court No. S-18051 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-08336 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | No. 7633 – December 9, 2022 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: David C. Nordlund, pro se, Anchorage, Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

Department of Corrections (DOC) officers charged a prisoner with conduct or language likely to interfere with the institution's orderly administration and security. Following a hearing, a DOC hearing officer imposed a suspended sentence of 10 days' punitive segregation.

The prisoner appealed to the superior court, arguing that the charge was retaliatory and that he had been improperly denied the right to present in-person testimony at his hearing. The superior court rejected the prisoner's arguments and found that DOC's decision was supported by "some evidence," reflecting the statutory standard of judicial review.[1]

The prisoner appeals. He argues that his due process rights were violated by the hearing officer's failure to allow in-person testimony and by DOC's failure to include in the record on appeal a surveillance video viewed at the hearing. He also argues that the superior court erred by applying the statutory "some evidence" standard of appellate review. Because we conclude that the prisoner has not shown that he was prejudiced by the lack of in-person testimony at the hearing or the surveillance video's omission from the record on appeal, and because the superior court properly applied the statutory standard of review, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

David C. Nordlund is a prisoner at Goose Creek Correctional Center. The prison's rule handbook provides that a prisoner who walks from his cell to the bathroom and back after 10:00 p.m. may not visit with other prisoners en route or stray into other areas of the housing unit. According to an incident report written by Officer Lambing, one evening at 10:45 p.m. he observed Nordlund "stopping at several rooms and knocking on the windows and doors" after leaving the bathroom. Officer Lambing confronted Nordlund about this prohibited conduct, and, according to Officer Lambing, Nordlund reacted by becoming argumentative.

Officer Lambing summoned help, and two more officers, Sergeant Jones

---

[1]     AS 33.30.295(b)(3).

and Officer McCormick, arrived to restrain Nordlund and escort him to segregation. According to incident reports, Nordlund refused to answer questions and instead accused the officers of harassing him. As the officers escorted him out of the housing unit, Nordlund allegedly "attempted to pull away and dictate the pace that [they] were walking." He was written up for violating a DOC regulation that prohibits "engaging in a group or individual demonstration or activity that involves throwing of objects, loud yelling, loud verbal confrontation, or pushing, shoving, or other physical contact that disrupts or interferes with the orderly administration of the facility."[2]

Nordlund requested a disciplinary hearing. A hearing advisor acting on his behalf collected written witness statements from five individuals: two prisoners who witnessed the incident; Lieutenant Pasa, an officer who assisted in the response; and Officers Nelson and Vang, who assisted in escorting Nordlund to segregation. Nordlund also requested surveillance video footage of the incident. The other prisoners' witness statements both denied that Nordlund had been disruptive or combative; Lieutenant Pasa endorsed what Sergeant Jones and Officer Lambing wrote in their incident reports; Officer Nelson recalled that Nordlund "may have had a couple of smart remarks like inmates do" but otherwise "didn't give us any issues on the escort"; and Officer Vang reported that Nordlund "didn't really give me a[n] attitude but was upset about going to seg."

At the disciplinary hearing the hearing officer read the incident reports and witness statements into the record. He then reviewed the surveillance video. It had no sound, but as described in the hearing's recording, the video showed Nordlund stopping briefly at two or three other cells on his return from the bathroom. It also showed him talking to Officer Lambing and Sergeant Jones; Nordlund asserted that the footage

---

[2]    22 Alaska Administrative Code (AAC) 05.400(c)(15) (2017).

showed Sergeant Jones berating him, but the hearing officer concluded that it showed the sergeant simply asking Nordlund questions. The hearing officer summarized Nordlund's testimony as disputing Officer Lambing's version of their encounter. Nordlund testified that "[h]e walked out of the bathroom around the corner and someone else stepped out and [Nordlund] stopped to answer him and then said good night to some other prisoners and continued back to his room." The hearing officer declined to hear in-person testimony from Nordlund's witnesses, apparently considering their written statements sufficient.

The hearing officer decided that Nordlund had violated the regulation prohibiting conduct "that clearly disrupts or interferes with the security or orderly administration of the facility."[3] He imposed 10 days of punitive segregation, all suspended if Nordlund went 180 days without another guilty finding.

Nordlund appealed to the prison superintendent, arguing that he had been improperly denied the right to present in-person testimony, that the evidence did not establish his guilt by a preponderance of the evidence, and that the write-up was in retaliation for complaints he had made against the officers involved, some grievances he had filed, and pending litigation against DOC. The superintendent denied the appeal[4] and Nordlund appealed to the superior court.

---

[3] *See* 22 AAC 05.400(c)(15).

[4] The superintendent's terse decision noted that Nordlund had been observed "walking by other [rooms] in the Mod knocking on the windows" in violation of the rules and that "sanctions [were] [appropriate]." We assume that this statement was in response to Nordlund's claim on appeal that the write-up was retaliatory. The superintendent did not otherwise discuss Nordlund's appeal points, but because the superintendent affirmed the hearing officer's decision we assume he accepted the hearing officer's rationale.

## B. Court Proceedings

In superior court Nordlund reasserted his arguments that the write-up was retaliatory and that he had been improperly denied the right to present in-person testimony. The court rejected these arguments, deciding that the retaliation claim was unsubstantiated, that the hearing officer was entitled to rely on the witnesses' written statements and not call them in person, and that the hearing officer's decision was affirmable as supported by "some evidence."[5] While it is evident from the court's decision that it listened to the recording of the disciplinary hearing, the surveillance video reviewed at the disciplinary hearing was not part of the record on appeal.

Nordlund moved for reconsideration.[6] He argued that the court had misunderstood the witness testimony, that it had erred by applying the "some evidence" standard of review, and that the surveillance video supported his case and should have been included in the record on appeal. In response, the court corrected an immaterial factual error[7] but otherwise denied reconsideration.

Nordlund appeals.

## III. STANDARD OF REVIEW

We will reverse a DOC disciplinary decision only if we "find[] that the prisoner's fundamental constitutional rights were violated . . . and that the violation

---

[5]    *See* AS 33.30.295(b) ("A disciplinary decision may not be reversed . . . (3) because of insufficient evidence if the [hearing record] shows that the disciplinary decision was based on some evidence that could support the decision reached.").

[6]    The superior court correctly treated the motion as a petition for rehearing under the appellate rules. *See* Alaska R. App. P. 506(a).

[7]    The court had mistakenly said that the statements of Nordlund's prisoner witnesses "indicated that [they] spoke with Mr. Nordlund as he was returning to his cell from the bathroom." One of the inmates wrote in his statement that he witnessed the incident, not that he spoke to Nordlund.

prejudiced the prisoner's right to a fair adjudication."[8]  "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[9] "Whether a party has suffered prejudice is likewise reviewed de novo."[10]  "When the superior court acts as an intermediate appellate court in an administrative matter, we independently review the merits of the administrative decision."[11]  "A disciplinary decision may not be reversed . . . because of insufficient evidence if the record . . . shows that the disciplinary decision was based on some evidence that could support the decision reached."[12]

## IV.   DISCUSSION

### A.   Nordlund Was Not Prejudiced By The Hearing Officer's Refusal To Accept In-Person Testimony.

DOC regulations provide that a prisoner facing discipline has the right to "present witnesses and other evidence in the accused prisoner's defense, . . . if written notice of the witnesses to be called or evidence to be admitted is given to the disciplinary tribunal no later than 24 hours before the hearing, unless good cause is shown why this time requirement cannot be met."[13]  According to DOC, Nordlund did not request in-person testimony until the hearing itself; before the hearing he had requested only written statements, which were duly collected by his hearing advisor and submitted at the hearing.  Nordlund does not address the requirement of pre-hearing notice in his brief.

---

[8]  AS 33.30.295(b)(1).

[9]  *Brandon v. State, Dep't of Corr.*, 73 P.3d 1230, 1233 (Alaska 2003).

[10]  *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 81 (Alaska 2018).

[11]  *Button v. Haines Borough*, 208 P.3d 194, 200 (Alaska 2009).

[12]  AS 33.30.295(b)(3).

[13]  22 AAC 05.430(a).

He argues that by denying him the opportunity to present in-person testimony, DOC "denied him the opportunity to present an adequate defense[, because h]e was unable to flesh out the details and preserve an adequate record for review[,] leaving the adjudicator . . . to guess at what someone meant by a vague statement that was introduced as evidence." Framing this issue as one of procedural due process, Nordlund cites *Brandon v. State, Department of Corrections*[14] for the proposition that "inmates facing disciplinary action [are] entitled to call witnesses and to present documentary evidence."

We do not need to decide in this case whether DOC's regulatory limitations on in-person testimony satisfy the demands of due process.[15] "In order to reverse a disciplinary decision, we must find both that a constitutional right was violated and that the violation prejudiced the inmate's right to a fair adjudication."[16] In *Walker v. State, Department of Corrections*, for example, a prisoner alleged a due process violation based on the hearing officer's failure to call the prisoner's witnesses.[17] Finding a due process violation, we held that it was prejudicial because the prisoner's "proposed witnesses could have helped resolve [an important] factual dispute" by corroborating the prisoner's version of events.[18] In *Huber v. State, Department of Corrections*, a prisoner alleged a due process violation when the hearing officer's decision contained "no information

---

[14] 865 P.2d 87 (Alaska 1993).

[15] In addition to the prehearing notice requirement, 22 AAC 05.430(c) allows the hearing officer to decline to call a prisoner's requested witness in order "to avoid repetitious or irrelevant evidence."

[16] *Huber v. State, Dep't of Corr.*, 426 P.3d 969, 975 (Alaska 2018).

[17] 421 P.3d 74, 76 (Alaska 2018).

[18] *Id.* at 82.

about the evidence relied on or the reasons for the . . . decision."[19]  Again finding a constitutional problem, we found prejudice as well, because without "any statement of reasons for [the] disciplinary decision[,] . . . [the prisoner] could not know which evidence 'formed the basis of the hearing officer's guilty finding' or whether the hearing officer correctly applied the regulation at issue[,] . . . . preclud[ing] meaningful review of the . . . decision."[20]

Here, however, Nordlund does not explain how in-person testimony could have changed the result of the disciplinary hearing, citing as prejudice only a minor factual error that played no part in the hearing officer's decision.[21]  He does not say what information he could have elicited from witnesses testifying in person that was not already contained in their written statements.  Given the lack of demonstrated prejudice, we cannot conclude that the hearing officer's decision of this issue violated Nordlund's right to procedural due process.

**B.   Nordlund Was Not Prejudiced By The Fact That The Surveillance Video Footage Of The Incident Was Not In The Superior Court Record.**

The record on appeal from an administrative agency "properly consists of evidence that was either 'submitted to' or 'considered by' the administrative board."[22]  "Physical exhibits will be retained by the agency unless specifically requested by the

---

[19]     426 P.3d at 973-74.

[20]     *Id.* at 975 (quoting *Walker*, 421 P.3d at 82).

[21]     *See supra* note 7.

[22]     *Alvarez v. Ketchikan Gateway Borough*, 28 P.3d 935, 939 (Alaska 2001) (quoting *Oceanview Homeowners Ass'n, Inc. v. Quadrant Constr. & Eng'g*, 680 P.2d 793, 798 (Alaska 1984)).

court."[23]  However, "[t]he loss of an administrative record is in itself not a violation of due process."[24]

Nordlund argues that he was denied due process because DOC failed to include the surveillance video of the incident in the record on appeal to the superior court.  We certainly agree that the video should have been included.  But Nordlund again fails to demonstrate that the omission of video evidence — lacking sound – prejudiced his right to appeal discipline that was essentially for disruptive speech.  The superior court, listening to the recording of the DOC hearing, heard Nordlund's and the hearing officer's different views of what the video showed them.  Nordlund asserted that the video showed him acting calmly while Officer Jones berated him, treated him like a child, and made intimidating gestures.  The superior court also heard the hearing officer's explanation that although he agreed the video did not show Nordlund being physically combative, the lack of audio meant that it did not convey the participants' words or "tone of voice."  To the hearing officer, the corrections officers appeared to be gesturing upstairs and asking Nordlund what happened, not berating him, and lacking an audio record the hearing officer chose to rely on the officers' written reports of what was said.

Nordlund does not assert how the lack of video evidence was prejudicial to his case, apart from arguing that it would have supported his defense in a general way.  Without audio, the video could not disprove the officers' statements that Nordlund was verbally "combative" and refused to cooperate with their attempts to question him.  We conclude that the agency's failure to include the surveillance video in the record on appeal did not violate Nordlund's right to procedural due process.

---

[23]     Alaska R. App. P. 604(b)(1)(B)(iii).

[24]     *Carlson v. Renkes*, 113 P.3d 638, 643 (Alaska 2005).

## C. The Superior Court Properly Relied On The "Some Evidence" Standard Of Review.

The Alaska Administrative Code describes DOC's burden at the disciplinary hearing: "[T]he disciplinary tribunal shall, by a preponderance of the evidence, find whether the prisoner has committed the infraction."[25] The standard of review on a judicial appeal is imposed by statute, AS 33.30.295(b)(3): "A disciplinary decision [by DOC] may not be reversed . . . because of insufficient evidence if the record . . . shows that the disciplinary decision was based on *some evidence* that could support the decision reached." (Emphasis added.) Nordlund argues that the "some evidence" standard of appellate review violates due process. He contends that "[i]f a decision may not be overturned if some evidence supports this decision, and [a DOC] employee['s] written report [alone] satisfied this standard, then the preponderance of the evidence standard" in the Alaska Administrative Code is meaningless.

If there is a conflict between the regulation and the statute, the statute controls unless we determine it to be unconstitutional.[26] And while we have never explicitly addressed the constitutionality of the "some evidence" standard under Alaska law, the U.S. Supreme Court has deemed the standard constitutional under the U.S.

---

[25]     22 AAC 05.420(b)(5)(D).

[26]     *See Sagoonick v. State*, 503 P.3d 777, 804 (Alaska 2022) ("A regulation is invalid if it 'conflicts with other statutes.' " (quoting *Manning v. State, Dep't of Fish & Game*, 355 P.3d 530, 535 (Alaska 2015))); *Frank v. State,* 97 P.3d 86, 91 (Alaska App. 2004) ("[W]hen a regulation conflicts with a statute, it is the regulation that must yield." (quoting *Gudmundson v. State*, 763 P.2d 1360, 1363 (Alaska App. 1988))); *United States v. Maes*, 546 F.3d 1066, 1068 (9th Cir. 2008) ("[A] regulation does not trump an otherwise applicable statute unless the regulation's enabling statute so provides.").

Constitution,[27] and many state courts have done the same under their state constitutions.[28] The U.S. Supreme Court explained:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. [Disciplinary decisions are] not comparable to a criminal conviction, and neither [is] the amount of evidence necessary to support such a conviction.[29]

We agree with this rationale and conclude that the "some evidence" standard satisfies the Alaska Constitution as well.[30] The superior court properly applied the "some evidence" standard of review mandated by AS 33.30.295(b)(3).[31]

---

[27] *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985).

[28] *See, e.g.*, *Muntaquim v. Kelley*, 581 S.W.3d 496, 500-01 (Ark. 2019) (holding prison disciplinary decision supported by "some evidence" cannot be basis of First Amendment retaliation claim); *In re Gomez*, 201 Cal .Rptr. 3d 124, 133 (Cal. App. 2016); *Kodama v. Johnson*, 786 P.2d 417, 420 (Colo. 1990); *State v. Iowa Dist. Ct. for Jones Cnty.*, 888 N.W.2d 655, 668-69 (Iowa 2016); *May v. Cline*, 372 P.3d 1242, 1245 (Kan. 2016); *In re Anderson*, 772 P.2d 510, 512 (Wash. 1989).

[29] *Hill*, 472 U.S. at 456 (citations omitted).

[30] Like the U.S. Supreme Court, Alaska courts have recognized the importance of giving prison administrators " 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.' " *State v. Avery*, 211 P.3d 1154, 1157 (Alaska App. 2009) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

[31] We also agree with the superior court that the evidence against Nordlund satisfied the "some evidence" standard. The disciplinary decision was based on the
(continued...)

## V. CONCLUSION

The superior court's order denying Nordlund's appeal is AFFIRMED.

---

<sup>31</sup> (...continued)
incident reports of two correctional officers, both of whom were present at the time of Nordlund's alleged misconduct. These officers' reports were endorsed by a third officer, and the hearing officer was able to review video evidence of the incident — which, while it did not obviously confirm the officers' version of the incident, did not obviously contradict it either. In *Hill*, in contrast, the court upheld a disciplinary decision that was based solely on one officer's uncorroborated observations. 472 U.S. at 456-57.